Ladies and gentlemen, before we begin with the arguments this morning, I need to feed the chair as presiding judge over to Judge Reina. Thank you, Judge O'Malley. This is a special occasion for the court. Judge O'Malley, I believe you have a motion to make. I do. I was back there feverishly preparing my argument, but I want to move the admission of two of my law clerks. First is Iman Sejudi, who is a member of the Bar and in good standing with the highest court of California. I have intimate knowledge of his credentials, and I'm satisfied that he will possess the necessary qualifications. Before clerking for me, Iman clerked for Magistrate Judge Love and Chief Judge Leonard Davis in the famous Eastern District of Texas, and before that worked for Quinn Emanuel for several years. So he came to me with lots of experience. He has served me well, and as I explained back in the roving room, he has kept me laughing. He is our chamber's socialite, and I will be sorry to lose him. The other admission that I'd like to move is of Christopher Michael Koepke, who is a member of the Bar and in good standing with the highest court of Texas. I have knowledge of his credentials, and I'm satisfied that he will possess the necessary qualifications. Before clerking for me, Chris worked at McDermott, Will and Emery, and also had clerked for the Honorable Caroline King on the United States Court of Appeals for the Fifth Circuit, and practiced law for several years before that as well. So again, Chris came with lots of experience, and he also has kept me laughing. We refer to him affectionately as the chamber's sweetheart, but he is someone that I will greatly miss. I will miss both of their contributions to our work, and I will miss having them in chambers. To Dwalik, we have a motion before us. Can I take them on guard here? I second that motion. To Domali, we're pleased that the motion has passed, and it's passed with flying colors. Thank you. Gentlemen, you may take the oath. Welcome, gentlemen. Okay, today we have three arguments. The first is an investment case. The second two are trade cases. So the first argument we have is Wills v. Shinseki, case number 2013-7058. Mr. Carpenter, do you want to reserve five minutes for rebuttal? I do, Your Honor. Okay. When you get to the ten-minute mark on the clock that's in front of you, it'll be indicated by the yellow light, as you know. Yes. Okay. You may begin. Thank you, Your Honor. May it please the Court, Kenneth Carpenter, appearing on behalf of Mr. Jerry Wills. This case involves a question concerning the applicability of the collateral estoppel rule when the reconsideration of an original claim is made for the purposes of assigning effective date under the provisions of 38 CFR 3.156C. The collateral estoppel rule does apply because the issues of stressor verification and nexus have been adjudicated in the reopen case, which was the basis for the grant of service connection based upon the receipt of new service records. Is there a distinction? I mean, you're not arguing, obviously, that collateral estoppel would just prevent them from rethinking the issue of whether he was entitled to an award. You're arguing that they are collaterally estopped from using the fact of service connection for purposes of setting the date? There are different things. I mean, the award has been given. There's, at this point, no question about the propriety of that award. And the issue that is on appeal is the question of the effective date to be assigned. And in order to assign the effective date, the provisions of 3.156C have to be applied. In applying those provisions, the regulation requires that the original claim is reconsidered. In doing that reconsideration, the board delved into issues of whether or not there was or was not stressor verification at the time of his original claim and or whether there was medical nexus evidence. Those issues were disposed of necessarily. Right. I guess the point I'm making is, is there a distinction between being estopped on the legal determination of a service connection and being estopped from actually considering the same facts for purposes of setting the date for the onset? I'm not sure what that distinction would be. I suppose a distinction could be drawn, but in the context of applying 3.156C, you're looking only at the question of when the condition first manifests and to what degree of disability. Between the time of the original claim and the date of reopening. The questions of whether or not there was or was not stressor verification or there was or was not medical nexus are simply not relevant to that inquiry. The inquiry under 3.156C is limited to the determination of whether or not the now granted benefit of post-traumatic stress disorder did or did not exist at some point in time along the continuum from the date of the original claim to the date of the reopening. And then the degree of disability in order to assign the appropriate rating within that new time frame that is being reconsidered under the provisions of 3.156C. When the VA grants service connection on a reopened claim that relies upon supplemental service records being received, they have determined that there is an entitlement to that benefit. All that is being determined when you apply 3.156C is when the now service-connected condition existed and to what degree of disability it had in that time frame. I guess that is my point. Those are factual questions. Are you saying that the board needs to turn a blind eye to all of the evidence simply because the legal determination of service connection has previously been made? The board does not turn a blind eye to the evidence related to the questions of stressor verification or nexus because they are simply not relevant. They are not relevant to the determination of whether or not the condition existed and to what degree of disability. I'm curious, Mr. Turbiner. When exactly was it that your client didn't serve in Vietnam? I'm sorry? Oh, well, let me read to you from the record. April 1995 hospitalization report. During his stay in the hospital, the veteran was also counseled extensively on dealing with his post-traumatic stress syndrome and his depression and memories of his experiences in Vietnam. June 1995 letter, untreated PTSD stemming from service in Vietnam. Let's see. November 1995, describing his first real discussion with the veteran of war experiences when the veteran describes combat, fellow soldiers, atrocities, let's see, flashbacks the veteran had about Vietnam, Viet Cong prisoner treatment. When exactly did that not occur? When wasn't he in Vietnam? Well, your honor, his post-traumatic stress disorder is based upon an attack that occurred while he was aboard ship. And that was, that was, was the attack aboard ship or was it in the hospital? I thought, I thought the... Well, it was while he was serving on that ship, your honor, on the USS Sickles, I believe it is. And he named three different officers as the same person that he had treated. And doesn't the board have an opportunity or the court have an opportunity to look back and say, gee, if he lied about his service in Vietnam, it's possible that he's also, when he gives three different names, that he's lying about the stressor from this officer whose name he can't remember? With respect, your honor, no. Those inquiries have been disposed of when the VA decided that he was entitled to service-connected compensation. The inquiry here now goes to when he had post-traumatic stress disorder from the time that he filed his original claim to the date of reopening. And does the government have any kind of perjury remedy or anything like that? No, I don't believe they do, your honor. I mean, he's clearly lying. Well, your honor, with respect, I do not believe that that is an issue in this inquiry. But even if it were an issue in this inquiry, it doesn't have anything to do with the question that is before this court on applicability of collateral estoppel. Collateral estoppel applies to issues that have been litigated. I'm just curious, is all Mr. Carpenter? I mean, you know, given that he has all these experiences in Vietnam that never occurred, I was wondering if he perhaps didn't serve with me when I was there. What, your honor? Just curious about the dates, you know? But those inquiries do not go to whether or not he does. I understand your legal argument, Mr. Carpenter. I read 7104 to say that the board review shall be based on the entire record in the proceeding, correct? That's correct, your honor. So when I see the claim that was raised by Mr. Wills in 2002, he brought up the very same factual pattern that you're claiming is sealed and closed and has already been decided. But because the board now has to review the entire record and it's reviewing the appeal of the RO's decision that was made in 2002, then it seems to me that the board is obligated to review the entire record that's before it. How would collateral estoppel apply in that situation? Because it goes to the question of what the issue is before the board. The issue before the board is the assignment of the effective date for an award that has already been made. Okay, the statute, as I read it, says that it shall base its review on the entire record in the proceeding. That's correct, your honor. So why was it not entitled to review the entire record? It certainly was entitled to review the entire record, but its review has to go to the evidence which is pertinent to the issue before the board. The issue before the board was the effective date to be assigned. The question of entitlement to service connection for post-traumatic stress disorder had been set. But lack of relevance is not an element of estoppel. No, your honor. The question under estoppel is whether or not the issues were or were not litigated. That takes me back to the very point I was making. The issue is the date entitlement arose, correct? Yes. So the board looks at all the facts and they say there is no such date. Now, it's possible that that's a different analysis than was done as it relates to the legal conclusion of whether there was service connection, but they are different issues. They have to be the same issues. Yes, your honor. They have to be the same issue. And the issue in this case is entitlement to an effective date for an award which has been made. So how could the board possibly determine an effective date under your theory? They would have to just guess, pick something randomly, right? No, your honor. They look to the question of what the medical evidence says about the existence of post-traumatic stress disorder. But part of that question is, is he an abject liar and is this stuff reliable in any fashion? No, your honor. I'm sorry. Go ahead. May I respond? Yes. I do not believe that's the case. The case here is a medical question of when post-traumatic stress disorder existed. And the existence of that post-traumatic stress disorder is a medical determination. And the medical evidence is the basis of the inquiry because it is that same medical evidence that determines the degree of disability. In this case, the VA has determined that he is entitled to service-connected compensation for post-traumatic stress disorder. They have determined that the degree of disability is total. That's right. They bought those stories that he was in Vietnam, didn't they? No, your honor. I do not believe they did. The basis of this was based upon an attack, an assault that occurred. It was based upon medical evidence from a VA doctor that talked about the relationship between the attack and his current disability from post-traumatic stress disorder. And the only issue is whether or not post-traumatic stress disorder existed, when it existed for the first time, and to what degree of disability. I see that I am into my rebuttal. Yes. I'll let you say it. We've got about three and a half minutes left. May it please the court. As we have pointed out, the decision below can be affirmed on an alternative ground, and the same result reached as was reached by the Veterans Court in this case. We've pointed out that under 38 U.S. Code 5110G, the earliest effective date that could have been awarded was August 2001, the date that was awarded in this case. That statute says where compensation is awarded pursuant to an administrative issue, for example, a liberalizing change in VA law. The effective date shall be fixed in accordance with the facts found, but not earlier than the effective date of the administrative issue. Counsel, if we accepted this alternative argument, wouldn't we be setting a bar for claims that are brought on new material evidence? It is our contention that this, Mr. Will's case, had to satisfy both sets of regulations, because the only diagnosis that entitles him to disability compensation is a diagnosis of post-traumatic stress disorder, which is a liberalizing change in VA law. That's not my question. My question is, if we apply 5110 in the manner that you're arguing, wouldn't that operate to prevent the application of 3.156 when the claim is reopened on the basis of new material evidence? First of all, it would only apply when there is a liberalizing change or an administrative issue. That's what we're contending. What we're saying is that both sets of regulations have to be met for this type of case. Your answer is, yes, it would. Yes, for this type of case. A case involving a liberalizing change in VA law, which is post-traumatic stress disorder. Wouldn't that undo a whole line of cases in the jurisprudence of this court with respect to 3.156, where we give veterans the opportunity to step forward with new material evidence and challenge prior decisions on their claims? No, it would not, because what we are contending is that the claim would have to satisfy both regulations. In this case, the result is the same. If I could turn to 3.156. If it's the same, why would we apply the alternative argument that would raise the specter that I'm talking about? It's the court's discretion as to which way to rule. Wasn't there a finding that his original claim had remained open? Does that impact your argument? What happened in this case was actually the claim was reopened. The 1969 claim was reopened and reconsidered by the board. Right, so that meant it was open. Yes, and the language in 5110G goes to a case where a claim is reopened as well as an initial claim. But if the court prefers to base its decision on the ground that the Veterans Court did and the board did, that leads to the same result. Let's talk about that issue, the issue of issue preclusion. It is a bit odd that we have an RO decision that there is, in fact, service connection. That issue is, for purposes of this claimant, that issue is final because the board didn't have an opportunity to consider it. But the board now goes back and, based on looking at the same set of facts, essentially reaches an opposite conclusion. The board did precisely what it was supposed to do. As the court noted, the standard under 3.156C3 is that the effective date is determined based on the date entitlement arose or the date of the previously decided claim, whichever is later. So the issue for the board was deciding whether it was the date of entitlement. When did the entitlement arise? As the court has observed, the board went back and looked at this entire period from August 2001 back to 1969 and assessed, did he have post-traumatic stress disorder during that period? And they concluded he did not. And that was a new finding of fact that the board made. Basically what they said was the date that it arose was never. So we're not going to move it back from this erroneous prior date to set it before this erroneous prior date of 2001. We're not going to set it prior to that because it never happened. I don't disagree. But at the same time, they did not reevaluate the claim from 2001 forward. They couldn't. Yes, I agree. They're only looking at the period prior, and they're making their own de novo determination based on the entire record that was before the board as to whether he had post-traumatic stress disorder during that period. And they come to the factual conclusion that he did not. That, in fact, what he had was a personality disorder. Was the factual conclusion, though, based on or turned on the subsidiary factual conclusion that there was, in fact, no stressor? That's part of it. That's certainly part of it. But they also evaluated the medical evidence. And this is in the board's decision. And they looked very, very closely at the medical evidence. There was, for example, they examined a medical opinion from Dr. Rosner. He had treated the veteran for an extensive period from 1995 approximately up through at least 2003, as I recall in the record. And his opinion, the board evaluated and found not to be credible for particular reasons. First, because his conclusion of post-traumatic stress disorder was based on him having served in Vietnam and having served in combat in Vietnam. And the board evaluated the whole record and said, this individual has never been anywhere near Vietnam. Right, the Middle East and Vietnam are kind of far apart. So he comes to the conclusion that that is not a credible medical opinion. And then the board notes that this doctor then shifted without any explanation and came to the conclusion that in 2003 he comes to the conclusion that he has post-traumatic stress disorder because he was forcibly hospitalized. And allegedly sexually assaulted, that's his core claim. Yes. Problem is they don't believe him. They do not credit the medical opinion because this is never explained. The doctor never explains why he changed his point of view. And as they say in the board opinion, this doctor's notes is full of descriptions of his childhood, of the stress that he went through as a child. And yet the doctor never evaluated that component. So the board looks at that opinion and it puts it aside. And it rests its decision on a medical board opinion back in 1969 finding based on contemporaneous conversations with the veteran that he had a personality disorder, a terrible childhood, very stressful. In 1969, though, we really didn't understand the whole concept of post-traumatic stress disorder. In the medical community, the legal community, it really was not very understood, wasn't it? I think that's correct. But certainly there was recognition back in 1969 of a general anxiety disorder. Combat fatigue or something. They used to call it combat fatigue or something. Well, I'm not referring to that. I'm just saying people that have a generalized anxiety disorder, they're just anxious about everything under the sun affects them and they are very, very anxious. That was certainly in the disability schedule and it was recognized by psychiatrists back in 1969. And yes, post-traumatic stress disorder was recognized much later and it was in 1980, April of 1980, that it was made part of the disability schedule. Right, that's a long time after 1969. I guess what I'm trying to say is whether or not the Board's reliance on a 1969 medical opinion was itself supported by substantial evidence or itself was an appropriate thing to consider. Could the Board have referred him for another evaluation? That would only give you information as to his current condition. It's not going to give you more information as to what happened back in 1969. What you're saying is it's effectively simply contemporaneous evidence. Yes, as the Board found. The Board found that the contemporaneous evidence was much more reliable and very detailed and it based its decision on crediting that contemporaneous body of evidence. And it also made findings as to the credibility of the veteran himself based on the numerous changes in stories on all sorts of issues. What Mr. Carpenter is going to say, I suspect, when he stands back up, is that because the Board's finding about entitlement turned at least in part on its finding that there was no in-service stressor, which is what all this credibility stuff goes to, that why isn't that relitigating the exact same issue that the RO decided, service connection? You're asking why could the Board decide that? The Board could decide that because, first of all, collateral estoppel has no application in this situation. It has no application at all because there's no finality to the regional office's decision. As the Veterans Court pointed out, every regional office decision is appealed by the veteran and you have this continuous stream of appeals. And it finally reaches the Board, resulting in the Board's decision in 2011 on the merits of the claim. I think that in this case that may be true because the appeal by Mr. Wills in 2002 brought up the issue of the effective date. But I think what you're arguing, how can that be that collateral estoppel has no basis in these type of cases because they're all a continuum? In this particular case, because you have the continuous stream of appeals, there's never any finality. And under the statute, under 38 U.S. Code 7104A, what the statute provides is that there shall be a final decision on appeals made by the Board. So it's the Board's decision that is the final decision. And that the decision of the Board is to be based on the entire record of the proceedings and upon consideration of all of the evidence and material of record and the applicable laws and regulations. And as this Court has pointed out in the paralyzed veterans case... So your response is that collateral estoppel applies at the Board level but not at the RO level. Not where there's a continuous stream of appeals. The Board's not bound by RO findings. That's correct. The Board is not bound. And there's an admission in the reply brief that the Board is not bound. That's at page 7 of the reply brief. That the Board is not bound by the Regional Office's decisions. So there is no collateral estoppel effect in this case. And as the Court has also pointed out, this is an issue that the Regional Office never really decided. They never looked at the question of when did entitlement arise. In order to look at that decision, a different issue... If you find that the record does show that that decision was made, then would your argument be different? No. No, because collateral estoppel has at least three components. You have to have finality, you have to have a decision on the same issue,  In this case, because of the way the scheme is structured, the Secretary has no right of appeal. And because the Secretary has no right of appeal from the Regional Office decision, because there's no right of appeal, there is never any full and fair opportunity to litigate. So that's another factor. He's alleging a new in-service stressor. I mean, that's what's going on here, is it not? He's alleging a new in-service stressor. He's not alleging the Vietnam stressor anymore, he's alleging a new one. Yes, and that was evaluated by the Board. The Board evaluated the assertion that he had been harassed on board the ship and that he had been forcibly hospitalized and sexually assaulted when he was forcibly hospitalized. The Board came to a conclusion, based on all of the record, that that did not happen. Any last words? Do you want to just say one last word to wrap up? I would like to just make one more point. On the question of 3.156C, there was no change, and even though the regulation changed, the provision of the regulation that deals with effective date did not change from the time in the 2005 change of the regulation. It was always the case that the effective date was determined based on the date that entitlement arose or the date that the VA received the previously decided claim, whichever is later. That provision of the regulation never changed. Okay, thank you. All right, we'll give the department four minutes. Restore the extra 30 seconds. I'd like to begin with the question of finality. The question for the issue of service connection is final in this case. The Board, excuse me, the Regional Office, determined there was an entitlement to service-connected compensation. They granted that benefit for... The question is, and he does get his award. The question really, one of the key questions, is one of the last points that your friend on the other side made, which is how can you say that it was fully and fairly litigated if the veteran controls the issues that get appealed to the Board? Because Congress decided that the government was not going to be in a position to be able to appeal their own favorable decisions. That is a legislative determination. That is a public policy determination by the Congress. There is no right of appeal to the VA when the VA thinks, as Judge Wallach pointed out, that they got it wrong. The Board doesn't get another bite of the apple. Once the RO has decided the question, that question is final. To decide otherwise puts every veteran in jeopardy of their original service connection finding should they appeal the rating assigned or the effective date assigned. The Board found a service connection with an effective date of August 2001. And what? But they didn't decide that your client was entitled to an earlier effective date. Which day, Your Honor? Well, there was an established connection date, effective August 2001. Correct. All right. What I'm saying is that the Board did not decide at that time that your client was entitled to an earlier effective date. That's the issue that your client opened up. He opened it up, and it was resolved as to his entitlement. Because his entitlement was based upon the VA's receipt of Supplemental Service Department records, the remedial provisions of 3.156C came into play. Because they came into play, the original claim was reopened, and he was entitled to a reconsideration. This then goes to the question of what's the purpose of 3.156C? When the original claim was reopened, then doesn't that undo your collateral-to-stop argument? No, it does not, Your Honor, because the regulation itself... It's your client that caused the issue to come up. He's entitled to reconsideration of what? His original claim, to determine whether or not the original claim not was correctly decided, but whether from the date of the original claim there exists evidence of the now service-connected disability. And that's what's at issue, whether it existed and the degree of disability. Within the plain language of 3.156C, the VA is provided for a retrospective evaluation. Are you saying, Mr. Carpenter, whether there existed evidence of his service in Vietnam? No, I am not. I am saying whether there exists evidence that he suffered from the condition which he has now been determined from 2001 forward to be entitled to compensation. That determination goes solely to the question of did he or did he not have post-traumatic stress disorder? Not where it came from, but did he or did he not have that disability? But if he didn't have it before 2001, because it never happened, that predicate cannot be litigated, Your Honor. Of course it can't. No, it cannot, Your Honor, because 3.156C was designed to be a remedial benefit to veterans. You just said, Mr. Carpenter, that he gets to ask the board to look backwards before 2001. That's correct. Not to its origin, not to its etiology, but to the question of whether or not he had, it's at least as likely as not, that he had a disability from post-traumatic stress disorder and to what degree. And if there was never any stressor, then it's probably pretty likely that he didn't have PTSD. With all due respect, Your Honor, that undermines the very purpose of this regulation. This regulation... No, it doesn't, because he still gets that 2001 date. Without the benefit of 3.156C. You turn 3.156C from a shield into a sword. You skewer the veteran because the board now says... No, he's not losing anything. He's simply not gaining anymore. What's he losing? He is losing the right to a retrospective evaluation He just got it. No, he did not. The VA relied exclusively upon their reanalysis of the medical evidence. The regulation provides for a retrospective evaluation. They should have gone back, if they wish to attack this, and determined whether or not, based upon a medical evaluation, psychiatrists do this all the time... That's a totally different argument, not one that you made in your brief. Oh, no, I'm simply responding to Judge Walloff, Your Honor. Okay, go ahead and finish, and then you can wrap up. The purpose of the retrospective evaluation is to gain medical evidence, looking back, considering all of the evidence of record, whether or not the veteran does or does not have post-traumatic stress disorder, and what degree of disability he had. It is not an opportunity for the VA to play gotcha, to say, we never should have granted this benefit. That's the only way they get there, because they make a new finding that he never had it, and was never entitled to it. And that's not the purpose of 3.156C. 3.156C was designed by the VA to help veterans, not harm them. Okay, you want to wrap up, final words? Okay, thank you. Thank you.